Filed 4/1/21  P. v. Selu CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WAYNE SELU, JR.,<br><br>    Defendant and Appellant. | A159356<br><br>(San Mateo County<br>Super. Ct. No. 18NF000489) |

Wayne Selu Jr. appeals from the judgment imposed after a jury convicted him of felony false imprisonment (Pen. Code § 236)[1] and making criminal threats (§ 422, subd. (a)).  The jury also found he used a deadly or dangerous weapon (§ 12022, subd. (b)(1)) in committing those offenses.  Selu's appointed appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436.  Our independent review of the record reveals a clerical error in the abstract of judgment but no other arguable issues.  We affirm.

---

[1] Undesignated statutory references are to the Penal Code.

## BACKGROUND

### A.

Kathryn Doe and Selu dated between 2002 and 2004 and then again in 2014 through 2018. Doe first tried to end their relationship in April 2004. At Selu's request, they met to talk. Doe brought her five-year-old daughter.

Selu grabbed Doe's sweater by the collar and forced her to sit, while he stood above her. Holding a knife in his hand, Selu said something like, "what if I just cut your fucking throat[?]" After Doe told Selu that she hated him, he stabbed her 24 times—in her face, neck, shoulder, hands, and wrists. As a result, Doe was in the hospital for eight days, suffered a permanent eye injury, and has multiple scars, including one that runs down her neck from her left ear.

In 2005, Selu was convicted of attempted voluntary manslaughter (§§ 192, subd. (a), 664), mayhem (§ 203), felony infliction of corporal injury on a cohabitant (§ 273.5, subd. (a)), and assault with a deadly weapon (§ 245, subd. (a)(1)).

### B.

Two years later, Doe began visiting Selu in prison—attempting to understand his actions. Their visits became friendlier and, eventually, Doe forgave him. When Selu was released from prison in 2014, he contacted Doe and they reestablished a romantic relationship.

One evening in January 2018, Selu's car broke down and Doe met him in a parking lot to help. When she arrived, Selu was already angry. Doe stood on the passenger side of his car, while Selu sat in the driver's seat. He was holding something that looked like a large pastry cutter, but with a thin razor at the end of its curved top. Selu told Doe that he "would slice [her] throat with it." He made slices in the dashboard with the tool and told Doe

2

he "would murder [her] . . . in cold blood." Given Selu's previous attempt to kill her, Doe believed him.

A police officer heard a man yelling and asked if Selu was yelling at Doe. Selu said he was yelling at voices in his head. Doe said she was "absolutely fine." Doe explained that, at the time the officer intervened, she was afraid of further angering Selu.

At some point after the police officer left, Selu also threatened to "burn [Doe's] children alive." Again, she believed he would carry through on these threats because of his acts in 2004.

Selu then tried, unsuccessfully, to start his car, using a pry bar that looked like a "giant oversized screwdriver." He pointed the pry bar at Doe's neck and told her that "he would jab it through [her] throat." Doe was afraid because of what happened in 2004 and because Selu was so angry. She took a few steps away from the car, but Selu told her, "don't try to run 'cause I'll catch you."

Selu's friend, Gary, arrived and described an ongoing "altercation" between Selu and Doe. Selu was yelling at Doe, as well as at others Gary could not see. He had seen Selu doing this before—yelling "at nothing, like somebody in the shadows."

Doe was pleading with Selu to calm down and to let her go home. Selu said she could leave when he said so. Selu, who stands about 6'2" tall and weighs around 400 pounds, also approached her, while bouncing the pry bar back and forth in his hand. He backed her into a space between their two cars and a fence. Although Doe wanted to leave, she believed she could not. Gary believed that Selu was threatening Doe with the pry bar and that this was "an emergency." Selu remained standing in front of Doe, with the pry

bar in his hands, for the next five to 10 minutes while she pleaded with him to stop.

In response to Doe's request for help, Gary tried to distract Selu with the car. Eventually, Selu put the pry bar down and told Doe to go home. Doe did not call the police that night, after she left, because she remained afraid that Selu would not be arrested and would only retaliate. After enduring a week of threatening phone calls from Selu, from phone numbers she did not recognize, Doe contacted the police and obtained a restraining order.

## C.

The defense did not present any evidence and argued the People had not proved their case beyond a reasonable doubt.

After the jury reached its verdicts, the trial court found "true" that Selu suffered four prior serious or violent felony convictions, within the meaning of the three strikes law (§§ 667, 1170.12). The trial court also denied Selu's motion to strike his prior strike convictions, pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

Sentencing Selu pursuant to section 1170.12, subdivision (c)(1), the trial court imposed an aggregate prison term of 13 years and 8 months. Selu received 1,412 total days' credit (706 actual days and 706 conduct credits) for time served.

The trial court imposed a $300 restitution fine (§ 1202.4, subd. (b)), two $40 court operations assessments (§ 1465.8, subd. (a)(1)) and two $30 conviction assessments (Gov. Code, § 70373, subd. (a)(1)). A $300 parole-revocation restitution fine (§ 1202.45) was also imposed but suspended. Although the trial court did not orally pronounce imposition of a 10 percent ($30) administrative fee on the restitution fine, the court clerk nonetheless

4

added such a fee to the abstract of judgment (presumably pursuant to section 1202.4, subd. (l)).

## DISCUSSION

Selu's appointed appellate counsel advised him, as required by *People v. Kelly* (2006) 40 Cal.4th 106, 124, of his right to file a supplemental brief to bring to this court's attention any issue he believes deserves review. Selu has not filed such a brief. We have independently reviewed the entire record and identified no arguable issues that would result in a disposition more favorable to Selu.

The trial court erred in instructing the jury, regarding the weapon enhancement, with an unmodified version of CALCRIM No. 3145. (*People v. Aledamat* (2019) 8 Cal.5th 1, 6, 8 (*Aledamat*).) The court instructed, in relevant part: "A deadly or dangerous weapon is any object, instrument, or weapon that is *inherently deadly or dangerous* or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury. [¶] In deciding whether an object is a deadly or dangerous weapon, consider all the surrounding circumstances, including when and where the object was possessed, where the person who possessed the object was going, and any other evidence that indicates whether the object would be used for a dangerous rather than a harmless purpose." (Italics added.) However, "[o]nly a few items that are designed to be used as deadly weapons are inherently deadly." (*Id.* at p. 8.) Objects like box cutters, pry bars, and screwdrivers are not inherently deadly or dangerous as a matter of law because they are designed for innocent uses. (See *id.* at pp. 6, 14.)

Here, the instructional error was harmless beyond a reasonable doubt. (See *Aledamat, supra*, 8 Cal.5th at p. 13.) The jury was unlikely to consider a pry bar or screwdriver inherently deadly or dangerous, even in a lay sense.

The prosecutor argued only the proper alternative—that Selu used the pry bar in a way that was capable of causing and likely to cause death or great bodily injury. And the defense did not contest that point. Our Supreme Court has held that the same error was harmless beyond a reasonable doubt on less compelling facts. (See *Aledamat, supra*, at pp. 4-6, 8, 13-14 [prosecutor argued box cutter was an "inherently deadly weapon"].)

The abstract of judgment must be corrected to delete the ten percent ($30) administrative fee (§ 1202.4, subd. (l)) added to the restitution fine. The trial court did not impose this fee in its orally pronounced judgment. In the case of a discrepancy, the trial court's oral pronouncement of judgment controls over the minutes or abstract of judgment. (*People v. Mesa* (1975) 14 Cal.3d 466, 471; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) We will order the abstract of judgment corrected to reflect the trial court's judgment.

### DISPOSITION

The judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment that deletes the 10 percent administrative fee ($30), which was added to the $300 restitution fine. The trial court is further directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

_____

BURNS, J.

We concur:

_____

NEEDHAM, ACTING P.J.

_____

RODRIGUEZ, J.*

A159356

_____

&ast; Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.